IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GERALD HALL,** : | | **CIVIL ACTION** |
| Plaintiff, : | | |
| : | | |
| v. : | | 24-CV-6660 |
| : | | |
| **CITY OF PHILADELPHIA,** *et al.* : | | |
| Defendants. : | | |

**MEMORANDUM**

**BARTLE, J.**                                                                                                                                   **MARCH 21, 2025**

Plaintiff Gerald Hall, a convicted inmate, filed this *pro se* civil rights action under 42 U.S.C. §§ 1983, 1985, and 1986, raising constitutional and state law claims based on his allegedly unlawful arrest, prosecution, and conviction. Hall seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Hall leave to proceed *in forma pauperis* and will dismiss the action pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.

**I.   FACTUAL ALLEGATIONS**[1]

   **A.   Hall's Conviction and Sentence**

Hall's claims arise from a criminal proceeding initiated against him in the Philadelphia County Court of Common Pleas. In 1992, a jury found Hall guilty of first-degree murder and related charges, and the Court sentenced him to life imprisonment on the murder conviction. *Commonwealth v. Hall*, CP-51-CR-0807821-1990 (C.P. Philadelphia). The Pennsylvania

---

1.   The facts set forth in this Memorandum are taken from Hall's Amended Complaint ("Am. Compl.") (ECF No. 11). Publicly available records have also been consulted in this screening under § 1915(e)(2)(B). *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). The Court adopts the pagination assigned to all of Hall's submissions by the CM/ECF docketing system.

Superior Court recently recounted the facts and procedural history relevant to that case as follows:

> [O]n the night of the shooting, police officers heard gunshots and spotted a Chevrolet Camaro traveling at a high rate of speed, which prompted the officers to activate their flashing lights and sirens until that vehicle pulled over. When the vehicle stopped, its passenger, later identified as Hall's cousin, Derrick Baker, fled, but he was eventually captured. Upon his capture, Baker disclaimed any involvement in the shooting and blamed his cousin, Hall. The driver of the Camaro, however, exited the vehicle and managed to escape.
>
> Later, Baker gave an additional statement to police, paralleling his earlier statement implicating Hall in the abovementioned murder. Detectives thereafter went to Hall's home, finding him hiding. Hall was then arrested and, at the police headquarters, ultimately confessed to killing the victim. Hall also admitted to the location of the murder weapon: under his basement couch. Following the acquisition of a search warrant, police found a .45 caliber automatic handgun consistent with where Hall stated it would be. A subsequent ballistics report matched the bullet and cartridge cases found at the scene of the crime with both the cartridge cases that were recovered in the Camaro as well as the handgun found in Hall's residence.
>
> At Hall's trial, in addition to reading in Baker's pre-trial testimony taken at the preliminary hearing, the Commonwealth presented eyewitness testimony to demonstrate that the driver of the Camaro, based on where the shots were fired from, was the shooter. Hall did not testify on his own behalf, but in his defense argued that the police coerced his confession and, too, averred that Baker's statement to the police was false and that Baker, and not Hall, was the actual murderer.
>
> Following sentencing, [the Superior] Court affirmed his judgment of sentence on July 16, 1997, and [the Pennsylvania] Supreme Court denied his petition for allowance of appeal on February 23, 1998. Hall sought no further review from the United States Supreme Court. Independent of the present action, Hall filed two since-dismissed PCRA [(Post Conviction Relief Act)] petitions. Most recently, in 2018, appointed counsel, upon review of that latter petition, filed a *Turner/Finley* no-merit letter stating that the petition lacked any issues of arguable merit and was additionally untimely. *See* Order, 12/13/18 (granting appointed counsel's application to withdraw from representation).

*Commonwealth v. Hall*, No. 2343 EDA 2023, 2024 WL 4973456, at *1 (Pa. Super. Ct. Dec. 4, 2024) (footnote omitted).  The Superior Court affirmed the dismissal of Hall's recent PCRA petition as untimely in December 2024.[2]  *See id.*

### B.     Hall's Amended Complaint[3]

Hall brings claims pursuant to 42 U.S.C. § 1983 for violations of his Fourth and Fourteenth Amendment rights during his arrest and prosecution.[4]  (Am. Compl. at 7-8.)  Hall names Philadelphia Police Department detectives in their individual and official capacities who allegedly participated in Hall's investigation and arrest: Thomas Augustine, Martin Devlin,

---

2.     Hall's federal habeas petition pursuant to 28 U.S.C. § 2254 has been stayed pending resolution of state court challenges to Hall's conviction and sentence.  Order, *Hall v. McGinley*, Civ. A. No. 22-5255 (E.D. Pa. Jan. 28, 2025) (ECF No. 65).

3.     Hall filed a document (ECF No. 12) containing the heading "Complaint," after filing his Amended Complaint (ECF No. 11 or "Am. Compl.").  The Clerk will be directed to strike the docket entry identifying ECF No. 12 as "Amended Complaint," because does not appear Hall intended it to constitute an amended complaint.  It contains only one paragraph, subtitled "Preliminary Statement," on just a single page and appears to primarily emphasize Hall's request for a jury.

   The operative Amended Complaint (ECF No. 11) in this case was received on January 6, 2025, and it superseded the original Complaint.  *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019) ("[A]n amended pleading supersedes the original pleading and renders the original pleading a nullity.").  While the Court must liberally construe *pro se* pleadings, "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings." *Argentina v. Gillette*, 778 F. App'x 173, 175 n.3 (3d Cir. 2019).  The submission of an amended complaint "effectively constitutes an abandonment of any prior complaints filed by a plaintiff" if he has not realleged them in the amended complaint. *Smith v. Price*, Civ. A . No. 11-1581, 2012 WL 1068159, at *4 (M.D. Pa. Mar. 5, 2012) (report & recommendation), *adopted*, 2012 WL 1072282 (M.D. Pa. Mar. 29, 2012).  Nevertheless, in consideration of Hall's *pro se* status and that a subheading at the beginning of ECF No. 11 reads "Addendum to Complaint," the Court will afford generous construction to the pleadings and consider alleged facts and arguments contained in ECF No. 1 to the extent that they might bear upon the claims raised in ECF No. 11.  The Court notes that Hall filed a document on March 13, 2025, containing the same "Addendum to Complaint" subheading.  (ECF No. 16.)  That filing largely duplicates the document at ECF No. 11, and accordingly its substance is addressed in the analysis of the Amended Complaint.

[4] Hall also cites to 42 U.S.C. § 1985(3) and § 1986 generally as bases for his claims.

3

James Morton, Sgt. Thomas Burke, and Detective Briggs (collectively "the detective defendants"). (*Id*. at 3, 7-8.) He alleges that defendants Augustine, Devlin, Morton, and Burke "with[held], suppress[ed], and conceal[ed] . . . exculpatory evidence" (Count I) and maliciously prosecuted him (Count III). (*Id.* at 7.) He claims that these defendants, along with Detective Briggs, violated his due process rights (Count II) and his equal protection rights (Count IV). (*Id*.) He also asserts a state tort claim of malicious prosecution against all detective defendants (Count VI). (*Id*. at 8.) Hall sues the City of Philadelphia for acquiescing in the practices used by the detective defendants, and for failing to train them properly (Count V). (*Id*. at 7-8.) Finally, Hall names Lawrence S. Krasner, the current District Attorney of Philadelphia, as a defendant in his individual and official capacities in this action (Count VII). (*Id*. at 8.)

As background to his claims, Hall alleges that the murder victim was a notorious neighborhood drug dealer who was killed by someone other than Hall over an outstanding drug debt. (*Id*. at 5.) Detectives Devlin and Morton interviewed Derrick Baker, who, as noted in the facts above, had fled from the Camaro after police pulled it over. After he was captured, Baker claimed that Hall had committed the murder. (*Id.* at 4.) Hall alleges that Baker ultimately signed a handwritten statement implicating Hall in the murder, and Baker testified for the prosecution at Hall's preliminary hearing. (*Id.* at 10-11.) At Hall's trial, the prosecution was unable to locate Baker, so his preliminary hearing statement was read into the trial record.[5] *See Commonwealth v. Hall*, No. 01010 Philadelphia 1996, slip op. at 4 (Pa. Super. Ct. Jul. 16, 1997).

---

[5] Hall submitted letters dated from 2022 and 2024 allegedly authored by Derrick Baker and his son as Exhibits to his original Complaint. (*See* ECF No. 1-1 at 11, 14.) The unauthenticated letters implicate Derrick Baker as the perpetrator of the murder for which Hall is serving a life sentence. (*Id*.)

Hall contends that, during the investigation, police also interviewed the victim's cousin, Raymond Jones, who provided evidence of Hall's innocence. According to Hall, Jones claimed to have witnessed the murder and said it was committed by another drug dealer. (Am. Compl. at 5.) The detectives purportedly provided Jones with an array that included a photo of an alternate suspect (not Hall), and Jones allegedly identified him as the man who killed his cousin. (*Id.*) They did not show Jones any pictures of Baker, but when they showed him Hall's picture, Jones supposedly stated, "No, he didn't do it, he wasn't even there." (*Id.* at 5-6.) Hall states that police questioned and released the alternate suspect because he was "to [sic] powerful a man to go after." (*Id.* at 6.) Hall asserts that the detective defendants typed up a record of the interview with Jones, but it was kept hidden from the prosecutors and defense. (*Id.*) Hall believes that this information, which Hall says he only learned of "years later," is hidden in an "H-file" that should be available in the discovery phase in this case. (*Id.* at 11, 6.)

Hall states that Devlin signed the affidavit supporting the warrant for his arrest, which included the information from Baker. (*Id.* at 10.) When they submitted the affidavit to the assistant district attorney, the detective defendants allegedly did not disclose the information received from Jones. (*Id.*) Hall contends that, if they had disclosed it, the assistant district attorney would not have approved the warrant because they would have lacked probable cause to arrest Hall. (*Id.* at 11.) The detective defendants arrested Hall at his grandmother's house, and he was held without bail. (*Id.*) Hall maintains that the detective defendants coerced his confession. *Hall*, 2024 WL 4973456, at *1. As a result of Hall's signed confession, police executed a search warrant on Hall's grandmother's house, where the murder weapon was found. (*Id.*)

Hall claims the City of Philadelphia acquiesced in or adopted the unlawful methods employed by the detective Defendants, and/or failed to properly train them. (Am. Compl. at 7-8.) Hall also blames District Attorney Krasner for failing to "prove that their key witness (Derrick Baker) didn't do it," and that Krasner should have intervened in his PCRA proceedings, which should have alerted that office to the investigation and prosecution problems in his case. (*Id*. at 8.) Finally, Hall faults Krasner for the lack of response to his recent submissions to the Conviction Integrity Unit of the District Attorney's office. (*Id.*)

Hall states that he was deprived of familial relationships, lost economic and career opportunities, and sustained physical injuries during the thirty-four years he has been unlawfully incarcerated. He seeks compensatory damages, punitive damages as to the detective defendants and Krasner, attorney's fees and costs, and to be provided with the detectives' unredacted investigation file for his case. (*Id*. at 9.)

## III.   STANDARD OF REVIEW

The Court will grant Hall leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the amended complaint if, among other things, the complaint fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation, [the Court will] accept the facts alleged in [the *pro se*] complaint as true, draw[] all reasonable

6

inferences in [the plaintiff's] favor, and ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up), *abrogated on other grounds by Egbert v. Boule*, 596 U.S. 482 (2022). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Hall is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## IV.  DISCUSSION

The vehicle by which constitutional claims may be asserted in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Hall seeks damages from defendants for numerous alleged constitutional violations during his prosecution, including the alleged failure to disclose *Brady* evidence (Count I), fabrication of evidence as a violation of his due process rights (Count II), malicious prosecution (Count III), selective enforcement in violation of equal protection (Count IV), municipal liability (Count V), and failure of the District Attorney to intervene in his proceedings (Count VII). However, for the following reasons, none of these claims is plausible, and they will be dismissed.

### A.  Allegations Subject to Dismissal on Absolute Immunity Grounds (Count VII)

Hall asserts that Krasner should have intervened in his PCRA proceedings "where all the Defendants' [sic] were mentioned to be responsible for Mr. Hall's wrong[ful] conviction." (Am. Compl. at 8.) Hall also argues that Krasner should have responded to "notarized notices" requesting action, presumably submitted to the Philadelphia District Attorney's Conviction

Integrity Unit.[6] Yet, these claims concern purported actions that would fall within Krasner's role as a prosecutor representing the Commonwealth, and he thus is entitled to absolute immunity. *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976) (explaining that prosecutors are entitled to absolute immunity from damages under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and [] presenting the State's case").

After a conviction is obtained, a prosecutor's conduct is entitled to absolute immunity where the conduct is "part of the prosecutor's continuing personal involvement as the state's advocate in adversarial post-conviction proceedings," which would include the PCRA allegation alleged here. *Yarris v. Cnty. of Delaware*, 465 F.3d 129, 137 (3d Cir. 2006); *see also Munchinski v. Solomon*, 747 F. App'x 52, 58 (3d Cir. 2018) ("[T]he prosecutor is entitled to absolute immunity from suit--even when he intentionally withholds evidence that is exculpatory under *Brady*" because "'accurately determining guilt or innocence requires that both the prosecution and the defense have wide discretion in the conduct of the trial and the presentation of evidence'" (quoting *Imbler*, 242 U.S. at 426)). In addition, to the extent that Hall seeks relief from Krasner as a supervisor over other prosecutors, District Attorneys and other supervisory prosecutors are entitled to absolute immunity from claims based on their role in pursuing a

---

6.     Among his assertions, Hall also contends that Krasner failed to "prove that [the prosecution's] key witness (Derrick Baker) didn't do it." (Am. Compl. at 8.) However, Krasner was not District Attorney at the time Hall's crimes were prosecuted, nor does Hall claim that he played a role in prosecuting the case. To the extent that Hall intends to assert that claim against the Philadelphia District Attorney's Office generally, the claim will be dismissed with prejudice because the United States Court of Appeals for the Third Circuit has held that district attorney's offices in Pennsylvania are not entities subject to suit under § 1983. *See Reitz v. Cnty. of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997) ("[T]he Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability . . . .").

prosecution on behalf of the Commonwealth.[7] *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009). For these reasons, Hall's § 1983 claim against Krasner based on these allegations will be dismissed under § 1915(e)(2)(B)(ii) for failure to state a claim.

### B.     *Heck*-Barred and Time-Barred Claims (Counts I, II, III, IV, V)

Hall seeks damages based on several allegations of unconstitutional prosecution, conviction, and related imprisonment, but his claims cannot proceed because of his intact convictions. The Supreme Court has determined that

> [I]n order to recover damages [or other relief] for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus . . . .

*Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (internal footnote omitted); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)--no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)--*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration."). These principles from *Heck* have been applied to also preclude claims under § 1985 and § 1986 where success on the claims would necessarily imply the invalidity of an intact conviction. *Zhai v. Cedar Grove Municipality*, 183 F. App'x 253, 255 (3d Cir. 2006) (*per curiam*) (barring civil rights claims under § 1985 and § 1986 due to *Heck*); *McQuillion v. Schwarzenegger*, 369 F.3d

---

7.     It would not appear that a prisoner has a "freestanding constitutional right" to have the Conviction Integrity Unit examine his or her case, in any event. *Lopez v. City of Lehigh Cnty.*, Civ. A. No. 21-4388, 2022 WL 103353, at *5 n.4 (E.D. Pa. Jan. 11, 2022) ("[T]here appears to be no specific constitutional right to seek discretionary prosecutorial reexamination of charging decisions.").

9

1091, 1097 n.4 (9th Cir. 2004) ("We agree with our sister circuits that *Heck* applies equally to claims brought under §§ 1983, 1985 and 1986."). As Hall's convictions have not been reversed, vacated, or otherwise invalidated, he may not pursue claims for damages alleged in Counts I, II, III, and V, because success on those claims would necessarily imply the invalidity of his convictions. In addition, his claim in Count IV for selective enforcement accrued long ago and is barred by the statute of limitations.

Hall seeks damages in Count I based on an alleged wrongful conviction for the failure to turn over alleged exculpatory and impeachment evidence in violation of the constitutional principle announced in *Brady v. Maryland*, 373 U.S. 83 (1963), namely that Raymond Jones identified someone else as the murderer in a photo array and that Jones said Hall was not present at the murder. Because the allegation of a *Brady* violation attacks the validity of Hall's conviction, it is barred under *Heck*. *See Heck*, 512 U.S. at 479, 490 (holding that plaintiff could not maintain a claim under § 1983 that prosecutors and an investigator had knowingly destroyed exculpatory evidence). This claim alleged against Augustine, Devlin, Morton, and Burke in their individual and official capacities will be dismissed without prejudice to Hall's asserting it in the future should he successfully overturn or invalidate his convictions.

Hall also seeks equitable relief in the form of an order directing the defendants to provide him with their unredacted investigative file. (Am. Compl. at 9.) The Court understands this request to access the investigators' file(s) as rooted in his *Brady* claim that the detective defendants withheld evidence against him about the Raymond Jones interview. This request is also *Heck*-barred because "a *Brady* claim, when successful postconviction, necessarily yields evidence undermining a conviction: *Brady* evidence is, by definition, always favorable to the

defendant and material to his guilt or punishment." *Skinner v. Switzer*, 562 U.S. 521, 536 (2011). The request for equitable relief is likewise dismissed. *See Wilkinson*, 544 U.S. at 81-82.

Hall's Fourteenth Amendment claim in Count II, alleging that the detective defendants fabricated evidence against him by presenting falsehoods concerning Baker's involvement in the murder, preparing Hall's false confession, and planting the gun for police to discover at his grandmother's house (ECF No. 1 at 15) is also barred under *Heck*. *See McDonough v. Smith*, 588 U.S. 109, 119 (2019) (a plaintiff may not bring a "fabricated-evidence challenge to criminal proceedings" until the proceeding ends in the defendant's favor or a resulting conviction is invalidated); *see also Floyd v. Att'y Gen*, 722 F. App'x 112, 114 (3d Cir. 2018). Because success on the fabrication of evidence claim would necessarily imply the invalidity of his conviction, Count II lodged against the detective defendants in their individual and official capacities is barred.[8]

Count III alleging malicious prosecution by the Detectives Devlin, Augustine, Morton, and Burke is likewise barred by *Heck* because such a claim does not accrue until a favorable termination occurs.[9] *See Nash v. Kenney*, 784 F. App'x 54, 57 (3d Cir. 2019) (*per curiam*)

---

8.  Hall's Amended Complaint cites the fabrication of evidence, but his original Complaint also alleged that the Defendants conducted an inadequate investigation, (*see* ECF No. 1 at 4), because they did not investigate information from Raymond James that would have led to the "real killer." This claim would be subject to the *Heck* bar too because, if proven, it would necessarily imply the validity of Hall's conviction. *See Goolsby v. City of Elmira*, Civ. A. No. 16-994, 2017 WL 11913653, at *5 (W.D.N.Y. Jul. 24, 2017) (dismissing inadequate investigation claim pursuant to *Heck*).

9.  "To prove a Fourth Amendment malicious prosecution claim, a plaintiff must show: '(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.'" *Curry v. Yachera*, 835 F.3d 373, 379 (3d Cir. 2016) (quoting *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007)).

(deciding that plaintiff's malicious prosecution claim was barred by the favorable-termination rule of *Heck*). The public record confirms that Hall was convicted in the criminal proceedings and that the conviction has not been invalidated, reversed, or otherwise called into question. Count III is thus not a plausible claim since the claim has not yet accrued.[10]

Hall asserts an equal protection claim in Count IV against the detective defendants in their individual and official capacities, but his Amended Complaint provides scant details on the factual and legal basis for his claim. (*See* Am. Compl. at 7.) In the original Complaint, Hall asserted that the detectives conspired to violate his civil rights under the Fourth, Fifth, and Fourteenth Amendments when they coerced false statements by Baker; fabricated evidence; subjected him to false arrest, false imprisonment, unreasonable search and seizure, and malicious

---

10. In his original Complaint, Hall alleged that the Defendants searched his grandmother's house without a warrant, failed to advise him of his *Miranda* rights, and coerced his confession. (ECF No. 1 at 1-2.) He has not specifically alleged a stand-alone Fourth Amendment count based on those allegations in the Amended Complaint. Such claims, if Hall intended to reassert them, might not be categorically barred by *Heck*, although there are circumstances in which *Heck* could bar such claims. *See Olick v. Pennsylvania*, 739 F. App'x 722, 726 (3d Cir. 2018) (*per curiam*) (explaining that "*Heck* does not automatically bar" claims for false arrest and false imprisonment but "there are circumstances in which *Heck* may bar such claims"); *McDonough*, 588 U.S. at 122 n.8 (indicating that *Heck* left room for "at least some Fourth Amendment unlawful-search claims to proceed without a favorable termination"). Nonetheless, to the extent Hall intended to reassert the claims in his Amended Complaint, they are still not plausible because if the claims were not covered by the deferred accrual rule of *Heck*, they accrued at the time the acts occurred over thirty years ago and would be time-barred under Pennsylvania's two-year statute of limitations applicable to § 1983 actions. *See* 42 Pa. Cons. Stat. § 5524; *Wallace v. Kato*, 549 U.S. 384, 397 (2007) ("[T]he statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."); *Nguyen v. Pennsylvania*, 906 F.3d 271, 273 (3d Cir. 2018) (stating that illegal search claims accrue at "the moment of the search"). Hall was arrested and charged in July 1990, decades before he filed this action in 2024. Similarly, the search occurred in 1990 and, even assuming Hall was unaware of the search on the day it occurred, the Amended Complaint indicates that he would have been aware of the search in the course of his criminal proceeding because the search resulted in evidence that was used against him at trial in 1992, including the murder weapon. Accordingly, Hall's purported claims challenging his arrest and the allegedly unlawful search and related seizure are time-barred.

prosecution; failed to turn over *Brady* and impeachment material to the defense; committed perjury at trial; and prosecuted him without probable cause. (ECF No. 1 at 30-31.) To the extent that Hall is asserting a selective enforcement claim in the Amended Complaint, *i.e.*, that the detective defendants targeted him based on an impermissible reason and not because he was the actual perpetrator of the crimes, he has failed to state a plausible claim because it is barred by the statute of limitations.[11]

To allege a plausible selective enforcement/equal protection violation, a § 1983 plaintiff must allege "(1) that he was treated differently from other similarly situated individuals, and (2) that this selective treatment was based on an unjustifiable standard, such as race, or religion, or some other arbitrary factor, . . . or to prevent the exercise of a fundamental right." *Dique*, 603 F.3d at 184 n.5 (internal quotation marks omitted). Pennsylvania's two-year statute of

---

11. Hall does not specify whether he is asserting a selective enforcement claim or a selective prosecution claim. In substance, the elements of the two are nearly the same. *See Matthews v. Runco's Tavern & Grill, Inc.*, Civ. A. No. 10-1215, 2013 WL 6055219, at *4-5 (M.D. Pa. Nov. 15, 2013). However, selective enforcement claims are generally asserted against government enforcement officials, while selective prosecution claims are lodged against prosecutors. *Id.* at *5. If a claim is directed solely at police misconduct, "the claim should be for selective enforcement." *Davis v. Malitzki*, 451 F. App'x 228, 234 n.11 (3d Cir. 2011). Because Hall asserts this claim against the detective defendants and the alleged facts are primarily directed at their conduct, the Court will analyze it as a selective enforcement claim. To the extent that it could be considered as a selective prosecution claim, the Court would still dismiss it because it would be *Heck*-barred. *See Dique v. N.J. State Police*, 603 F.3d 181, 188 n.10 (3d Cir. 2010) (differentiating a selective enforcement claim from a selective prosecution claim and stating that the latter "could possibly benefit from the *Heck* bar"). The claim here was necessarily resolved by Hall's conviction by a jury, because selective prosecution is a defense to a criminal conviction in Pennsylvania. *See Shahid v. Borough of Eddystone*, Civ. A. No. 11-2501, 2012 WL 1858954, at *5 n.9 (E.D. Pa. May 22, 2012) (citing *Commonwealth v. Olavage*, 894 A.2d 808, 811 (Pa. Super. Ct. 2006)), *aff'd*, 503 F. App'x 184 (3d Cir. 2012) (*per curiam*). Because a successful selective prosecution civil claim would render a criminal conviction invalid, a § 1983 plaintiff is barred by *Heck* from raising that claim until such time as his underlying conviction has been reversed, vacated, or otherwise impugned. *See id.* (citing *Kramer v. Village of N. Fond du Lac*, 384 F.3d 856, 862 (7th Cir. 2004)); *Kinder v. Marinez*, Civ. A. No. 19-2692, 2019 WL 5445924, at *2 (E.D. Pa. Oct. 23, 2019) (citing *Nesblett v. Concord Fed. Prob.*, Civ. A. No. 13-515, 2014 WL 808848, at *4 (D.N.H. Feb. 28, 2014)).

limitations applies to a selective enforcement claim. *See* 42 Pa. Cons. Stat. § 5524; *Wallace*, 549 U.S. at 397. A claim accrues "when a plaintiff has a complete and present cause of action, that is, when [he] can file suit and obtain relief." *Dique*, 603 F.3d at 185 (internal quotation marks omitted). In general, this means that the statute of limitations will start running at the time the plaintiff "knew or should have known of the injury upon which [his] action is based." *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998).

In the case of a selective enforcement claim, our Court of Appeals has ruled that a claimant need not "have been convicted and have had that conviction reversed, expunged or invalidated," but that the claim accrues "at the time that the wrongful act resulting in damages occurs . . . ." *Dique*, 603 F.3d at 188. For Hall, this means that his selective enforcement claim accrued in 1990 when he was arrested and charged with the crime that, he alleges, was committed by his cousin. At that point, police had conclusively honed in on Hall as the perpetrator of the crimes, and Hall presumably would have been aware of his own alleged innocence and wrongful treatment. His claim in this 2024 action was brought well past the expiration of the two-year statute of limitations. *See id.*; 42 Pa. Cons. Stat. § 5524.

In Count V, Hall contends that the City of Philadelphia adopted policies that were "a moving force" behind the violations of his constitutional rights, and that it otherwise failed to properly train, supervise, or discipline officers. (Am. Compl. at 7-8.) In light of the fact that the preceding underlying alleged violations are barred by *Heck* and time-barred, Hall's derivative claim against the City of Philadelphia under *Monell v. New York Department of Social Services*, 436 U.S. 658 (1978), cannot stand because there is no viable underlying constitutional violation alleged. *Munchinski v. Solomon*, Nos. 06-4093, 07-1345, 2007 WL 3121331, at *2 (3d Cir. Oct. 26, 2007) (holding that *Heck* bars consideration of municipal liability claims "to the extent they

14

rely on the invalidity of [the plaintiff's] conviction"); *Dean v. Disalvo*, No. 13-7647, 2015 WL 1585858, at *2 (N.D. Ill. Apr. 2, 2015) (holding that a *Monell* claim is barred by *Heck* where the underlying claim is *Heck*-barred); *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (explaining that a claim under *Monell* requires the city's practice or custom to have caused a constitutional violation). This claim also will be dismissed without prejudice.

### C. State Law Claim for Malicious Prosecution (Count VI)

Finally, Hall asserts a state law claim for malicious prosecution. This claim will also be dismissed. In Pennsylvania, malicious prosecution has three elements. "The defendant must have instituted proceedings against the plaintiff (1) without probable cause, (2) with malice, and (3) the proceedings must have terminated in favor of the plaintiff." *Kelly v. General Teamsters*, 544 A.2d 940, 941 (Pa. 1988). As noted above, public records confirm that Hall was convicted of the charges and thus, the criminal proceedings did not terminate in his favor. His conviction has not been overturned or otherwise invalidated. Thus Hall cannot show as a matter of law that the proceeding terminated in his favor. *See Burke v. Kubicek*, No. 1015 EDA 2020, 2021 WL 4307031, at *2 (Pa. Super. Ct. Sept. 22, 2021).

## VI.   CONCLUSION

For the foregoing reasons, the Court will grant Hall's Motion to Proceed *In Forma Pauperis*, and dismiss the case. The claims against defendant Krasner will be dismissed with prejudice for failure to state a claim, because Krasner is entitled to absolute immunity. The federal claims alleged in Counts I, II, III, and V are barred by *Heck* and will be dismissed without prejudice for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *See Curry*, 835 F.3d at 379 (*Heck*-barred claims must be dismissed without prejudice). Claim IV alleging a selective enforcement claim will be dismissed with prejudice because it is time-barred.

The state law claim for malicious prosecution will be dismissed for failure to state a claim because Hall's convictions remain intact. *See Burke*, 2021 WL 4307031, at *2. No leave to amend will be granted because the defects cannot be cured at this time. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Hall may reassert the *Heck*-barred claims only if his conviction is ever reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of *habeas corpus*.

    An appropriate Order follows.